CONNOR W. OLSON (SB #291493)
Law Offices of Connor W. Olson
520 Capitol Mall, Suite 150
Sacramento, CA 95814
office@cwo-law.com
Telephone: (916) 905-7276

TIANGAY M. KEMOKAI (SB# 331807)
Tiangay Kemokai Law, P.C.
520 Capitol Mall, Suite 150
Sacramento, CA 95814
info@tiangaykemokai-law.com
Phone: 916-213-0908

Attorneys for Plaintiff
BRIAN GARLOUGH

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN GARLOUGH,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company; LITHIA MOTORS, INC., an Oregon corporation, LITHIA DMID, INC., a Texas corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO.: 2:20-cv-01879-JAM-AC<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>*DEMAND FOR JURY TRIAL*<br>*DEMAND FOR PUNITIVE DAMAGES* |

Plaintiff Brian Garlough, by and through his attorneys, alleges as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Brian Garlough ("Plaintiff" or "Mr. Garlough") is and at all relevant times was an individual residing in the County of San Joaquin, State of California.

2.      Defendant FCA US LLC, ("FCA"), is a Delaware Limited Liability Company with its headquarters in Auburn Hills, Michigan.  FCA is a North American automaker and arguably one of the largest in the world.  FCA operates two facilities in California including a parts distribution center and a business center.  FCA conducts substantial business in California, including targeting California consumers like Plaintiff with advertisements.

3.      Defendant Lithia Motors, Inc., ("Lithia Motors") is an Oregon corporation with its principle headquarters in Medford, Oregon.  Lithia Motors is the third largest automotive retailer in the United States and is publicly traded on the New York Stock Exchange.  Approximately one quarter of Lithia Motor's revenue is generated in California.

4.      Defendant Lithia DMID, Inc., ("Lithia DMID") is a Texas corporation with its headquarters in Medford, Oregon.   Lithia DMID is a subsidiary of Lithia Motors.

5.      According to Lithia Motors' SEC filings, Lithia DMID operates in Midland, Texas using the assumed business name of "All American Chrysler Jeep Dodge of Midland."  The "About" section of the website associated with All American Chrysler Jeep Dodge of Midland references Lithia Motors only.  The website also provides visitors with a link to Lithia Motor's "Investor Relations" website, as well as links to Lithia Motor's privacy policy and employment opportunities.  The website does not include any visible references to Lithia DMID.

6.      The true names, capacities, and liabilities of Does 1 through 25, whether individual, corporate, associate, or otherwise are unknown to Plaintiff and therefore Plaintiff sues said Doe Defendants using fictitious names pursuant to Section 474 of the California Code of Civil Procedure.  Plaintiff is informed and believes and therefore alleges that each of the Doe Defendants is legally responsible in some manner for the events and happenings herein referred to and in doing the actions mentioned below was acting individually and as an agent of FCA, Lithia DMID, and Lithia Motors (together "Defendants").  Plaintiff will amend his Complaint to allege such true names and capacities when they have been determined.

7.      Plaintiff is informed and believes and therefore alleges that all known and unknown defendants acted on behalf of, and for the benefit of, at the direction of, and in conspiracy with, each and every defendant, known or unknown, and their agents and/or employees, and each of them, to do the acts complained of herein.

8.      This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

9.      The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

-2-

### STATEMENT OF FACTS

10.    Starting in 2017, FCA marketed, produced, and shipped a total of 3,300 2018 Dodge Challenger SRT Demons ("Dodge Demon") to dealerships throughout the United States and Canada.  According to statements made by FCA, 380 Dodge Demons were purchased in California.  Based on information and belief, FCA sells more vehicles in the State of California than any other State.

11.    Although similar in appearance to other Dodge Challenger models, the Dodge Demon is markedly different in terms of price and features, as well as advertised capabilities and future collectability.  According to Tim Kuniskis, Head of Passenger Cars for Dodge SRTs: "[t]he people who bought a Challenger SRT Demon are enthusiasts to the core. . . ."

12.    Before being offered for sale, the Dodge Demon was advertised extensively, including over the internet and on television shows such as "Jay Leon's Garage" and "Top Gear."  These advertisements were directed at individuals, among others, in California, and constantly touted the Dodge Demon's workmanship, value, and future collectability.

13.    One of the most prominent featured aspects of the vehicle, was its specifically designed and trademarked 45-square-inch "functional Air-Grabber™ hood scoop," which, FCA's development engineers "agreed . . . had to make a statement and still be very functional. It had to be bold and aggressive. . . ."[1]



---

[1] The following image is taken from https://www.dodge.ca/en_dir/pdf/2018/brochures/challenger.pdf

SECOND AMENDED COMPLAINT

14.     FCA's blog confirms the obvious: the "Demon's most striking visual cues is its massive hood scoop – the largest functional hood scoop opening offered on any production car. Positioned optimally near the leading edge of the hood. . . ."[2]  Playing on this, FCA's "unique, three month-teaser campaign" spent considerable time promoting the one-of-a-kind hood scoop through, among other things, specific, highly-produced online advertising.[3]

15.     After viewing FCA's advertisements, Plaintiff became interested in purchasing the Dodge Demon.  In order to facilitate the purchase of a Dodge Demon, in February 2018, Plaintiff signed the "2018 Dodge Challenger SRT Demon Customer Acknowledgement," which was notarized in the County of San Joaquin, State of California.

16.     The 2018 Dodge Challenger SRT Customer Acknowledgment begins as follows:

> The 2018 Dodge Challenger SRT Demon (the "Vehicle") is the automotive industry's first and only purpose-built, street-legal production drag car. The demon is a unique performance vehicle with unique characteristics parts systems and capabilities and performs unlike other vehicles.

17.     Based on information and belief, FCA was aware that the Dodge Demon was experiencing issues with the Air-Grabber Hood Scoop.  More specifically, that the Dodge Demon's Air-Grabber Hood Scoop expands, contracts, warps, and vibrates when the Dodge Demon is used, which in turn, chips, scrapes and cracks the original factory paint and causes damage to the Dodge Demon's hood, including rust.

18.      Despite this knowledge, FCA concealed the Air-Grabber Hood Scoop issues from consumers and continued to market the Dodge Demon as having a particular grade and quality.

19.     On or around July 5, 2018, Plaintiff signed the Vehicle Buyer's Order, which is attached as **Exhibit A** and incorporated herein by this reference.

20.     The Subject Vehicle came with a warranty, which provides in part:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or

---

[2] https://blog.dodge.com/features/re-imagining-the-air-grabber-hood-scoop/index.html
[3] https://www.youtube.com/watch?v=c_zw62uIa4k

SECOND AMENDED COMPLAINT

factory preparation. There is no list of covered parts since the only exception are tires and unwired headphones. You pay nothing for these repairs. These warranties repairs or adjustments -- including all parts and labors connected with them – will be made by your dealer at no charge, using new or remanufactured parts.

21.     On or about July 12, 2018, Plaintiff's Dodge Demon (the "Subject Vehicle") was shipped from the dealership to Plaintiff in Manteca, California.[4]

22.     In early August of 2018, after just 75 miles, Plaintiff first noticed damage to the Subject Vehicle caused by the Air-Grabber Hood Scoop issue. Plaintiff immediately took the Subject Vehicle to the Lodi Dodge Dealership. After inspecting the damaged hood, the Lodi Dodge Dealership told Plaintiff to call the hotline specific for FCA's high-end SRT vehicles.

23.     When Plaintiff contacted the SRT hotline, he was instructed to take the Subject Vehicle back to a dealership. When he did, Plaintiff was informed that FCA had authorized the dealership to repaint the hood. When Plaintiff pointed out that the issue would continue, the dealership responded, "contact SRT."

24.     Plaintiff contacted SRT approximately three additional times between August 2018 and the end of the year, and each time was told that FCA was working on a solution.

25.     Plaintiff once again contacted the SRT hotline in February 2019 and was told that FCA was "redesigning" the hood scoop.

26.     Desperate for the use of the Subject Vehicle, Plaintiff spent significant time and expense attempting to obtain a repair. Without a viable fix, however, authorized dealerships and other repair facilities refused to guarantee their work in light of the Subject Vehicle's value or were otherwise unable to offer certified repainting.[5]

27.     On December 4, 2019, a Technical Service Bulletin that called for the replacement of the Air-Grabber Hood Scoop bezel with a smaller one was released. Based on information and belief, the repair called for in the Technical Service Bulletin is inadequate since

---

[4] Plaintiff received a Certificate of Title from the State of California on October 4, 2018, and paid California sales tax and registration fees. Plaintiff did not register or receive title to the Subject Vehicle in Texas.
[5] Based on information and belief, FCA does not offer the opportunity for California consumers, including Plaintiff, to receive certified paint repairs.

it damages the vehicle and does not stop the new hood scoop bezel from also causing damage to the hood.

28.     In February 2020, Plaintiff was contacted by a repair facility which provided a quote to repaint the hood and replace the hood scoop bezel with the redesigned part for $3,604.00.  Once again, however, the repair facility was unable to guarantee matching paint and the $3,604.00, quote is more than double what FCA has offered for the repair.  Accordingly, Plaintiff did not receive the repair.

29.     To date, FCA has not offered an adequate, cost-free repair that conforms the Subject Vehicle to its express warranties.  As such, the Subject Vehicle's use and value remains substantially impaired.

30.     On October 29, 2020, Plaintiff provided Defendants with notice of their violations of the Texas Deceptive Trade Practices Act ("DTPA"), the Consumer Legal Remedies Act ("CLRA"), and breaches of warranty.  Plaintiff will amend his Second Amended Complaint once sixty (60) days has passed to assert violations for the DTPA against Defendants, as well as violations of the CLRA and breaches of warranty under Texas law.  Until such amendments are made, Plaintiff does not seek damages by way of this Second Amended Complaint from Lithia DMID or Lithia Motors for violating the DTPA, the CLRA or for breach of any express or implied warranty.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**False Advertising Law**
**(Violation of California Business & Professions Code §§ 17500, *et seq.*)**
**(Against FCA)**

31.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

32.     California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) ("FAL"), prohibits unfair, deceptive, untrue, or misleading advertising.  The Cal. Bus. Prof. Code § 17500 specifically prohibits:

-6-

> [a]ny person . . . to make or disseminate or cause to be disseminated from this state before the public in any state . . . in any advertising device . . . or in any manner or means whatever, including over the internet any statement concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known or which by exercise of reasonable care should be known, to be untrue or misleading.

33.   FCA falsely advertised and promoted over the internet and in their promotional materials that the Dodge Demon came with a one-of-a-kind fully functional Air-Grabber Hood Scoop, that it was free from defects in quality and workmanship, that the vehicle was not impaired by its very use, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that FCA would honor its warranty.

34.   These advertisements, inducements, and representations, on its blogs, websites, and other promotional materials, come within the meaning of false advertising as defined in Cal. Bus. & Prof. Code §§ 17500, *et seq*., in so much that they were intended as inducements for car enthusiasts in California to purchase the limited Dodge Demon.

35.   FCA knew or should have known that these statements were deceptive and misleading because the Air-Grabber Hood Scoop issue manifests itself with only minimal use and FCA claimed that the engineers reviewed every part and piece.  FCA's false advertisements were calculated to induce Plaintiff and other California residents to purchase the Dodge Demon to increase profits and ratings.

36.   FCA's actions caused injury to Plaintiff because: a) he would not have purchased the product if he had known that the Dodge Demon did not have the functionality, quality, workmanship, or performance features as expressly warranted by FCA or he would have paid substantially less for the Dodge Demon; (b) he paid a premium price for the Dodge Demon as a result of FCA's false warranties and misrepresentations; and (c) he purchased a Dodge Demon that did not have the functionality, performance features, qualities, workmanship or value promised by FCA.

37.    As a result of its actions, FCA has improperly obtained money and has caused Plaintiff to unnecessarily expend time and resources to remedy the Air-Grabber Hood Scoop issue through its unfair acts and practices.  Thus, Plaintiff requests that FCA restore this money to Plaintiff and that this Court enjoin FCA from continuing to violate Cal. Bus. & Prof. Code §§ 17500, *et seq*., in the future.

38.    Pursuant to Cal. Code Civ. Proc. § 1021.5, Plaintiff also requests that the Court award reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act**
**(Cal. Civ. Code §§ 17500, *et seq*.)**
**(Against FCA)**

39.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

40.    Plaintiff is a "consumer" within the meaning of Cal. Civ. Code § 1761(d).

41.    The sale of the Subject Vehicle to Plaintiff was a "transaction" within the meaning of Cal. Civ. Code § 1761(e).

42.    The Subject Vehicle is a "good" within the meaning of Cal. Civ. Code § 1761(a).

43.    As alleged herein, FCA falsely advertised and promoted over the internet and in their promotional materials that the Dodge Demon came with a one-of-a-kind fully functional Air-Grabber Hood Scoop, that it was free from defects in quality and workmanship, that performance was not impaired by its very use, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that FCA would honor its warranty.  Specifically, FCA violated Cal. Civ. Code § 1770(a)(7), which prohibits "[r]epresenting that goods are of a particular standard, quality, or grade . . ."; § 1770(a)(14) "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

44.    Plaintiff relied on FCA's false representations.  Plaintiff would not have purchased the Subject Vehicle or would have paid significantly less for it, but for FCA's

-8-

unlawful conduct.  Plaintiff acted reasonably when he purchased the Subject Vehicle based on FCA's false representations.

45.     FCA's actions caused injury to Plaintiff because: a) he would not have purchased the product if he had known that the Dodge Demon did not have the functionality, quality, workmanship, or performance features as expressly warranted by FCA or he would have paid substantially less for the Dodge Demon; (b) he paid a premium price for the Dodge Demon as a result of FCA's false warranties and misrepresentations; and (c) he purchased a Dodge Demon that did not have the functionality, performance features, qualities, workmanship or value promised by FCA.

46.     Under Cal. Civ. Code § 1780(a), Plaintiff may seek injunctive and equitable relief for FCA's violations of the CLRA.  Plaintiff has already notified FCA via a demand letter months ago indicating his intent to pursue claims under the CLRA, which has provided FCA an opportunity to cure the unlawful practice, consistent with Cal. Civ. Code § 1782.  Since FCA has failed to take corrective action within 30 days of receipt of the demand letter, Plaintiff also requests damages as permitted under Cal. Civ. Code § 1782(d).

## THIRD CAUSE OF ACTION
**Violation of Express Warranty Under the Song-Beverly Consumer Warranty Act**
**(Cal. Civ. Code §§ 1790 *et seq.*)**
**(Against FCA)**

47.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

48.     The Subject Vehicle is a "consumer good" and Plaintiff is a buyer within the meaning of Cal. Civ. Code § 1791.  FCA is also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

49.     In connection with the sale of its Dodge Demon, Defendants provided written, express warranties that, among other things, "covers the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation . . . " during the applicable warranty period.

50.     Within the applicable warranty period, Plaintiff delivered the Subject Vehicle to authorized repair facilities due to the Air-Grabber Hood Scoop issues.  These authorized repair facilities, however, were unable to conform the Subject Vehicle to the applicable warranties, depriving Plaintiff of the use of the Subject Vehicle.  Indeed, the very use of the Subject Vehicle causes further damage to it.

51.     Despite Plaintiff performing each and every duty required under the terms of the warranty agreement and under the provisions of the Song-Beverly Consumer Warranty Act, FCA failed to repair the defective and nonconforming Subject Vehicle as warranted, which suffers and continues to suffer from the defective conditions that substantially impair the Subject Vehicle's use, value and safety.

52.     Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff is entitled to damages and other legal and equitable relief, including, at his election, the right to revoke acceptance of the Subject Vehicle or the overpayment or diminution in value of the Subject Vehicle, and is also entitled to reasonable attorneys' fees and costs.

53.     Because FCA's willful refusal to comply with the provisions of the Song-Beverly Consumer Warranty Act is entirely unreasonable and in violation of Civil Code §§ 1793.2 and 194(c), Plaintiff is entitled to penalties of up to two times the damages.

**FOURTH CAUSE OF ACTION**
**Violation of Implied Warranty Under the Song-Beverly Consumer Warranty Act**
**(Cal. Civ. Code §§ 1790 *et seq.*)**
**(Against FCA)**

54.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

55.     The Subject Vehicle is a "consumer good" and Plaintiff is a buyer within the meaning of Cal. Civ. Code § 1791.  FCA is also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

56.     The express and implied warranty of merchantability included with each sale of the Dodge Demon means that FCA warranted that the Dodge Demon (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which

-10-

the Dodge Demon would be used; and (c) conformed to the promises or affirmations of fact made on the Dodge Demon's labeling.

57.   The Subject Vehicle, however, would not pass without objection in the automotive limited-production trade because of the Air-Grabber Hood Scoop issue.  Since the Dodge Demon was marketed as  an exclusive vehicle with certain attributes and future collectability, the Subject Vehicle's current issues makes it unpassable without objection in trade under the contract descriptions and unfit for the ordinary purposes for which such the Subject Vehicle was designed.

58.   Moreover, FCA has been provided with numerous opportunities to cure the defects but failed to do so; the December 4, 2019 Technical Service Bulletin's so-called fix falls short and there have been no guarantees of workmanship or certification for repainting.

59.    FCA's actions have deprived Plaintiff of the benefit of his bargain and have caused the Dodge Demon to be worth less than what he paid, as well as substantially impairs its future use, value, and/or safety, and collectability.

60.   As a direct and proximate result of FCA breaching its duties, the Subject Vehicle has a substantially impaired value.  Accordingly, Plaintiff has been damaged by the diminished value of the Subject Vehicle and the actual and potential increased maintenance and repair costs.

61.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff is entitled to damages and other legal and equitable relief, including, at his election, the right to revoke acceptance of the Subject Vehicle or the overpayment or diminution in value of his Subject Vehicle, and is also entitled to reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### Violation of Manufacturer's Duties Under the Song-Beverly Consumer Warranty Act
### (Cal. Civ. Code §§ 1790 *et seq*.)
### (Against FCA)

62.   Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

63.   The Dodge Demon is a "consumer good" and FCA is a "manufacturer" under Cal. Civ. Code § 1791.

-11-

64.    The Dodge Demon is sold in California.

65.    In connection with the sale of the Dodge Demon, FCA provides express warranties that cover "the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

66.    Pursuant to Cal. Civil Code § 1793.2(a)(1) and (3), FCA is obligated to (a) "[m]aintain sufficient service and repair facilities reasonably close to all areas where [the Dodge Demons] are sold to carry out the terms of [its] warranties or designate and authorize in this state as service or repair facilities independent repair or service facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties . . ." and (b) "[m]ake available to authorized service and repair facilities sufficient literature and replacement parts to effect repairs during the express warranty period."

67.    Despite these obligations, FCA fails to maintain and/or designate authorized repair facilities that are able to guarantee that paint repairs, necessitated by the Air-Grabber Hood Scoop issues, will conform to the factory specifications in violation of its obligation to carry out its warranties.

68.    As a result, Plaintiff is denied the benefit of authorized service and repair facilities reasonably close to where FCA's goods are sold.

69.    Additionally, FCA failed to commence service and repair of the Subject Vehicle within a reasonable time after the defect arose and/or within 30 days.

70.    Based on FCA's continuing breach of its obligations under Cal. Civil Code § 1793.2(a), Plaintiff is entitled to reimbursement for repair costs and injunctive relief.

## SIXTH CAUSE OF ACTION
### Unfair Business Practices
### (Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.,)
### (Against FCA)

71.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

72.    California's Unfair Business Practices Law prohibits (Cal. Bus. & Prof. Code § 17200, § *et seq.*) ("UCL") defines unfair business practice to include "unlawful, unfair, or fraudulent" act or practice as well as "any unfair, untrue, or misleading" advertising. A business act is unlawful if it violates any other law or regulation.

73.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

74.    FCA has engaged in fraudulent and unfair business practices as it relates to the marketing, sale and warranting of the Dodge Demon.

75.    The business acts and practices alleged herein are unfair because they caused Plaintiff to falsely believe that FCA was offering a vehicle with a certain level of quality, grade, and workmanship, and had certain features without defect. This deception was likely to have induced reasonable consumers, including Plaintiff, to purchase the Subject Vehicle, which he otherwise would not have purchased, or would have paid substantially less.

76.    The gravity of the harm to Plaintiff resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of FCA for engaging in such deceptive acts and practices. By committing the acts and practices alleged herein, FCA engaged in, and continues to engage in, unfair business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, et seq.

77.    FCA has also violated the "unlawful" prong of the UCL by violating several California laws, as alleged herein, including the FAL and CLRA.

78.    FCA has also violated the "fraudulent" prong of the UCL by misleading Plaintiff to believe that the Dodge Demon came with a one-of-a-kind fully functional Air-Grabber Hood Scoop, that it was free from defects in quality and workmanship, that performance was not impaired by its very use, that the "engineers reviewed every part and piece," that the Dodge

-13-

Demon was "accessorized to build upon its exclusivity and future collectability," and that FCA would honor its warranty.

79.    FCA's actions caused injury to Plaintiff because: a) he would not have purchased the product if he had known that the Dodge Demon did not have the functionality, quality, workmanship, or performance features as expressly warranted by FCA or he would have paid substantially less for the Dodge Demon; (b) he paid a premium price for the Dodge Demon as a result of FCA's false warranties and misrepresentations; and (c) he purchased a Dodge Demon that did not have the functionality, performance features, qualities, workmanship or value promised by FCA.

80.    Therefore, Plaintiff requests that this Court cause FCA to restore this money to Plaintiff and enjoin FCA from continuing to violate the UCL as alleged herein.

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Violation of the Magnuson-Moss Warranty Act)**
**(15 U.S.C.  §§ 2301, *et seq.*)**
**(Against FCA)**

81.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

82.    The Subject Vehicle is a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

83.    Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 2301(3).

84.    FCA is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 230.

85.    In connection with the sale of the Subject Vehicle, FCA made representations and provided a warranty that "covers the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation . . . " during the applicable warranty period.

86.    In connection with the sale of the Subject Vehicle, FCA also gave multiple implied warranties as defined in 15 U.S.C. § 2301(7), including but not limited to the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

-14-

87.    The Subject Vehicle, however, did not conform the representations and within the applicable warranty period, Plaintiff delivered the Subject Vehicle to authorized repair facilities due to the issues with the Air-Grabber Hood Scoop.  Despite numerous attempts spanning more than a year, these authorized repair facilities, however, were unable to conform the Subject Vehicle to the applicable representations or warranties, thus depriving Plaintiff the use of the Subject Vehicle and substantially impairing its value.

88.    Despite Plaintiff performing each and every duty required under the terms of the warranty agreement and under the provisions of the Magnuson-Moss Warranty Act, Defendants failed to repair the defective and nonconforming Subject Vehicle as warranted, which suffers and continues to suffer from the defective conditions that substantially impair its use and value.

89.    FCA further breached the implied warranties, in that the Subject Vehicle is not fit for the ordinary purpose for which it was designed.

90.    As a direct and proximate result of FCA breaching these warranties, Plaintiff has been damaged in an amount exceeding $25 and is entitled to all damages, including the diminution in value of the Subject Vehicle.

**EIGHTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(Against FCA)**

91.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

92.    In connection with the sale of the Subject Vehicle, FCA represented and warranted that the Subject Vehicle came with a one-of-a-kind fully functional Air-Grabber Hood Scoop, that it was free from defects in quality and workmanship, that performance was not impaired by its very use, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that FCA would honor the Subject Vehicle's warranty at no cost to Plaintiff.

93.    Plaintiff reasonably relied on FCA's affirmation of facts and promises in the advertisements and promotional materials, which became the basis of the bargain between Defendants and Plaintiff.

-15-

94.     FCA breached these express warranties and representations by failing to deliver a conforming vehicle and/or by failing to warrant the Subject Vehicle at no cost to Plaintiff.

95.     FCA's actions caused injury to Plaintiff because: a) he would not have purchased the product if he had known that the Dodge Demon did not have the functionality, quality, workmanship, or performance features as expressly warranted by FCA or he would have paid substantially less for the Dodge Demon; (b) he paid a premium price for the Dodge Demon as a result of Defendants' false warranties and misrepresentations; and (c) he purchased a Dodge Demon that did not have the functionality, performance features, qualities, workmanship or value promised by Defendants.

### NINTH CAUSE OF ACTION
**Fraudulent Concealment**
**(Against FCA)**

96.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

97.     FCA was aware of the Hood Scoop Defect when it marketed and sold the Dodge Demon to Plaintiff.

98.     Based on FCA's awareness of the Air-Grabber Hood Scoop issues, its statements regarding the Air-Grabber Hood Scoop's alleged  functionality, and being fully aware that Plaintiff could not have reasonably been expected to know of same, FCA had a duty to disclose the Hood Scoop Defect to Plaintiff in connection with the sale of the Subject Vehicle.

99.     FCA materially misrepresented and/or actively concealed material facts, in whole or in part, intending to induce Plaintiff to purchase the Subject Vehicle at a higher price than Plaintiff otherwise would have had he been aware of the true facts as they relate to the Subject Vehicle.

100.     Plaintiff was unaware of these omitted material facts and would not have acted as he did if he had known of the concealed and/or suppressed facts.  Indeed, had Plaintiff known of the Air-Grabber Hood Scoop issues, he would not have purchased the Subject Vehicle or would have paid substantially less.

101.    Because of the concealment and/or suppression of material facts regarding the Subject Vehicle, Plaintiff has sustained damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against FCA)**

102.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

103.    FCA represented and led consumers to believe that the Subject Vehicle came with a one-of-a-kind fully functional Air-Grabber Hood Scoop, that it was free from defects in quality and workmanship, that performance was not impaired by its very use, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that Defendants would honor the Subject Vehicle's warranty at no cost to Plaintiff.

104.    FCA knew or should have known that these statements were deceptive and misleading at the time they were made.

105.    FCA materially misrepresented and/or actively concealed these material facts, in whole or in part, intending to induce Plaintiff to purchase the Subject Vehicle at a higher price than Plaintiff otherwise would have.

106.    Based on the above, Plaintiff paid more for the Subject Vehicle.  At the time, Plaintiff was unaware of the truth and would not have acted as he did if he had known of the concealed and/or otherwise misrepresented facts.

107.    Because of the concealment and misrepresentation of material facts regarding the Subject Vehicle, Plaintiff sustained damages in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**
**Breach of Contract**
**(Against Lithia Motors and Lithia DMID)**

108.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

109.    Plaintiff entered into the agreement attached to this Second Amended Complaint as **Exhibit A**.

-17-

110.    Although Plaintiff did everything required by him, Lithia Motors and Lithia DMID breached the agreement by delivering to Plaintiff the Subject Vehicle with an impaired value.

111.    As a result, Plaintiff has been damaged in an amount to be proven at trial.

**TWELFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Against FCA)**

112.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

113.    As a result of FCA's wrongful and deceptive conduct, Plaintiff has suffered a determinant while FCA has received a benefit.

114.    Plaintiff has conferred a benefit on FCA by purchasing the Subject Vehicle. FCA received a premium price benefit and/or additional sales from Plaintiff as a result of this unlawful conduct, which includes representing and warranting that the Subject Vehicle came with a one-of-a-kind fully functional Air-Grabber Hood Scoop, that it was free from defects in quality and workmanship, that performance was not impaired by its very use, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that FCA would honor the Subject Vehicle's warranty at no cost to Plaintiff.  FCA appreciates or has knowledge of such benefit.

115.    FCA's retention of this benefit violates principles of justice, equity, and good conscience.  Indeed, FCA should not be allowed to retain the premium price profits and/or additional sales generated from the sale of products that were unlawfully marketed, advertised, promoted, and sold.  Allowing FCA to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

116.    Plainly stated, it would be inequitable and unjust for FCA to retain the benefit of revenues obtained from the sale of the Subject Vehicle, because FCA materially misrepresented the functionality, performance features, qualities, grade, and value.

-18-

117.    Thus, FCA is in possession of funds that were wrongfully retained from Plaintiff that should be disgorged as illegally gotten gains.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

118.    For general damages in amounts according to proof;

119.    For special damages in amounts according to proof;

120.    For back pay;

121.    For liquidated damages;

122.    For treble damages;

123.    For restitution;

124.    For punitive and exemplary damages as provided by law;

125.    For attorney's fees as provided by law;

126.    For pre-judgment interest as provided by law;

127.    For costs of suit incurred herein; and

128.    For such other and further relief as the Court deems fair and just.

Dated:  November 10, 2020

By:    */S/ Connor W. Olson*

**Connor W. Olson**, SBN 291493
Law Offices of Connor W. Olson
520 Capitol Mall, Suite 150
Sacramento, CA 95814
connor@cwo-law.com
Phone: 916-905-7276

**Tiangay M. Kemokai**, SBN 331807
Tiangay Kemokai Law, P.C.
520 Capitol Mall, Suite 150
Sacramento, CA 95814
info@tiangaykemokai-law.com
Phone: 916-213-0908

**Attorneys for Plaintiff Brian Garlough**

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims triable by jury.

Dated:  November 10, 2020

By: _____
  */S/ Connor W. Olson*

**Connor W. Olson**, **SBN 291493**
Law Offices of Connor W. Olson
520 Capitol Mall, Suite 150
Sacramento, CA 95814
connor@cwo-law.com
Phone: 916-905-7276

**Tiangay M. Kemokai,** **SBN 331807**
Tiangay Kemokai Law, P.C.
520 Capitol Mall, Suite 150
Sacramento, CA 95814
info@tiangaykemokai-law.com
Phone: 916-213-0908

**Attorneys for Plaintiff Brian Garlough**

SECOND AMENDED COMPLAINT

# EXHIBIT A

DEAL#: 56326
STK#: JH102519

## VEHICLE BUYER'S ORDER

DATE: 07/05/2018      DEAL # 56326

| Buyer: **BRIAN KEITH GARLOUGH** | Seller: **ALL AMERICAN CJD OF MIDLAND** |
|---|---|
| Co-Buyer: N/A | **3801 WEST WALL STREET** |
| Address: **4718 BALSAM DR** | **MIDLAND, TX 79703** |
| City, St, Zip, County: **STOCKTON, CA 95212-2108** | **432-522 3115** |
| Phone # H - **209-481-5327**   W - | |

| Stock # | Year | Make & Model | Color | Vehicle Identification Number | Lic. No. | New/Used | Cylinders |
|---|---|---|---|---|---|---|---|
| JH102519 | 2018 | DODGE CHALLENGER | PQD/Blue | 2C3CDZH99JH102519 | JB | NEW | 8 |

DESCRIPTION OF TRADE-IN(S)

| Stock # | Year | Make & Model | Color | Vehicle Identification Number | Lic. No. | | Cylinders |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Cash Price as Equipped Before Rebate:** | | $ 105911.00 | 6. Other Charges:  Consisting of: | | |
| **Rebate Assigned to Dealer:** | | $   N/A | A. Dept of Motor Vehicles:  Consisting of: | | |
| *NET CUSTOMER PRICE:* | | $ 105911.00 | - Title Fees | $ | N/A |
| 1. Cash Price Before Rebate: | | $ 105911.00 | - License/Registration | $ | N/A |
| 2. Down Payment:  Consisting of: | | | - Other: **Inspection Fee** | $ | 7.00 |
| A. Cash From Customer: | $ 5000.00 | 2a. INCLUDES | B. Sales/Use Tax | $ | 171.61 |
| B. Manufactures Rebate: | N/A | AS ___ 0 | C. Credit Life Insurance | $ | N/A |
| C. Trade_In(s) | | DOWN PAYMENT | D. Accident & Health Insurance | $ | N/A |
| - Trade-In(s) Allowance | $ | LOAN PROCURED | E. Service Contract | $ | N/A |
| - Balance owed on Trade-In(s) | $   N/A | SOLELY BY | F. Maintenance Contract | $ | N/A |
| - Net Trade-In(s) Allowance | $   N/A | PURCHASER. | G. Gap | $ | N/A |
| | $   N/A | | H. **Doc Fee** | $ | 150.00 |
| Should the actual payoff to the lien holder be more than represented in this transaction, customer agrees to pay the difference within five days of notification of the additional amount due. If the actual payoff is lower than represented in this transaction a credit will be issued to customer. | | | I. **N/A** | $ | N/A |
| | | | J. **N/A** | $ | N/A |
| X _____ | | | K. N/A | $ | N/A |
| D. Deferred Down Payment | $   N/A | | L. N/A | $ | N/A |
| E. Total Down Payment | | $ 5000.00 | M. N/A | $ | N/A |
| 3. Cash Balance as Equipped: | | $ 100911.00 | N. N/A | $ | N/A |
| 4. Aftermarket Products Purchased: | | | O. N/A | $ | N/A |
| Preservation Products | $   N/A | | P. Total Other Charges: | $ | 328.61 |
| Security System / Misc. | $   N/A | | 7. Financed Amount: | $ | 101239.61 |
| Lifetime Oil | $   N/A | | 8. Finance Charge: | $ | N/A |
| N/A | $   N/A | | 9. Deferred Payment Price: | $ | 106239.61 |
| N/A | $   N/A | | 10. Total of Payments: | $ | 101239.61 |
| Total Aftermarket Products Purchased: | $   N/A | | 11. Annual Percentage Rate: | | N/A % |
| 5. Unpaid Balance of Cash Price: | | $ 100911.00 | 12. Payment Schedule as Follows: | | |

ADDITIONAL TERMS/AGREEMENT:  11  Payments of 101239.61  beginning  08/19/2018

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW,

BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE.

A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS

NOTICE IS REQUIRED BY LAW.

Buyer Signature: *Brian Garlough*

Co-Buyer Signature: ___N/A___      Dealer Representative: _____

FORM# 40681      07/05/2018  10:26 am

## CERTIFICATE OF SERVICE

I, Connor Olson, hereby declare under penalty of perjury as follows: I am counsel of record for Plaintiff in this case.  On November 10, 2020, I electronically filed the foregoing with the Clerk for the United States District Court for the Eastern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

Executed on November 10, 2020

*/S/ Connor W. Olson*
Connor W. Olson