UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRIAN GARLOUGH,

        Plaintiff,

    v.

FCA US LLC, a Delaware limited liability company, et al.,

        Defendants.

No.  2:20-cv-01879-JAM-AC

**ORDER GRANTING DEFENDANT LITHIA'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT FCA'S MOTION TO DISMISS**

I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

On July 5, 2018 Brian Garlough ("Plaintiff") purchased a 2018 Dodge Demon in Texas that he had shipped to his home state of California.  Second Am. Compl. ("SAC") ¶¶ 19-21; see also SAC Ex. A.  One of the most prominent features of the car is the 45 square inch, air-grabber hood scoop ("hood scoop").  SAC ¶ 13. Based on information and belief, Plaintiff alleges that Defendant FCA, who marketed and produced the Dodge Demon, was aware of issues with the hood scoop but concealed this defect from

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 9, 2021.

1

consumers and continued to market the car.  Id. ¶¶ 17, 18.
Specifically, Plaintiff alleges that the hood expands, contracts,
warps, and vibrates when the car is used which chips, scrapes,
and cracks the original factory paint, causing damage to the
car's hood, including rust.  Id. ¶ 17.

In early August 2018, Plaintiff claims he noticed damage to
the car caused by the hood.  Id. ¶ 22.  Plaintiff immediately
took his car to the Lodi Dodge Dealership where he was instructed
to call the hotline specific for FCA's high-end SRT cars.  Id.
When Plaintiff contacted the hotline, he was told to take the car
back to the dealership and was informed that FCA had authorized
the dealership to repaint the hood.  Id. ¶ 23.  However, when
Plaintiff pointed out that the problem would persist, he was told
to contact SRT.  Id.  Plaintiff contacted SRT about three times.
Each time he was told FCA was working on a solution.  Id. ¶ 24.
When he contacted the hotline again in February 2019, he was told
FCA was redesigning the hood scoop.  Id. ¶ 25.

On December 4, 2019, a technical service bulletin was
released that called for the replacement of the hood scoop bezel
with a smaller one.  Id. ¶ 27.  However, Plaintiff alleges this
repair is inadequate since it doesn't prevent the new hood scoop
bezel from also causing damage to the hood.  Id.  In February
2020, Plaintiff was contacted by a repair facility which provided
a quote to repaint the hood and replace the hood scoop bezel with
the redesigned part.  Id. ¶ 28.  Plaintiff refused the repair
because the facility was unable to guarantee matching paint and
the quote was more than double what FCA offered to pay for the
repair.  Id.

Plaintiff subsequently brought this action for: (1) false advertising in violation of California law; (2) violation of the California Consumer Legal Remedies Act; (3) violation of the express warranty under the Song-Beverly Consumer Warranty Act; (4) violation of the implied warranty under the Song-Beverly Consumer Warranty Act; (5) violation of manufacturer's duties under the Song-Beverly Consumer Warranty Act; (6) unfair business practices in violation of California law; (7) violation of the Magnuson-Moss Warranty Act; (8) breach of express warranty; (9) fraudulent concealment; (10) negligent misrepresentation; (11) breach of contract; and (12) unjust enrichment. SAC at 6-19.  Plaintiff's eleventh cause of action for breach of contract was brought against Lithia Motors and Lithia DMID, id. at 17, the dealership where Plaintiff purchased his car.  Id. ¶¶ 5, 109-110. All the other causes of action were brought against FCA.

FCA then filed this motion to dismiss for lack of personal jurisdiction and failure to state a claim.  FCA's 12(b)(2) Mot., ECF No. 23; FCA's 12(b)(6) Mot., ECF No. 24.  Lithia DMID and Lithia Motors also brought a motion to dismiss for lack of personal jurisdiction and failure to state a claim.  Lithia's 12(b)(2) Mot., ECF No. 29; Lithia's 12(b)(6) Mot., ECF No. 30. Plaintiff opposed these motions.  Pl.'s Opp'n to FCA's 12(b)(2) Mot., ECF No. 31; Pl.'s Opp'n to FCA's 12(b)(6) Mot., ECF No. 32; Pl.'s Opp'n to Lithia's 12(b)(2) Mot., ECF No. 34; Pl.'s Opp'n to Lithia's 12(b)(6) Mot., ECF No. 35.  Defendants replied.  FCA's 12(b)(2) Reply, ECF No. 36; FCA's 12(b)(6) Reply, ECF No. 37; Lithia's 12(b)(2) Reply, ECF No. 38; Lithia's 12(b)(6) Reply, ECF No 39.

1

## II.   OPINION

2       A.   <u>Judicial Notice</u>

3       FCA requested the Court take judicial notice of the

4  warranty booklet for 2018 Dodge gas vehicles.  <u>See</u> FCA's Req.

5  for Judicial Notice, ECF No. 25.  The Court may consider the

6  warranty under the incorporation by reference doctrine, which

7  permits courts to take into account documents "whose contents

8  are alleged in a complaint and whose authenticity no party

9  questions, but which are not physically attached to the

10  plaintiff's pleading."  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076

11  (9th Cir. 2005).  Because Plaintiff's complaint relies on the

12  warranty, <u>see</u> SAC ¶ 20, and he has not contested its accuracy,

13  the Court may consider it.  Accordingly, FCA's request is

14  granted.

15       B.   <u>Personal Jurisdiction</u>

16       Rule 12(b)(2) of the Federal Rules of Civil Procedure

17  authorizes a defendant to seek dismissal of an action for a lack

18  of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Plaintiffs

19  bear the burden of showing that jurisdiction is proper but

20  "[w]here, as here, the motion is based on written material

21  rather than an evidentiary hearing, plaintiff need only make a

22  prima facie showing of jurisdictional facts."  <u>Schwarzenegger v.</u>

23  <u>Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).  But

24  "the plaintiff cannot simply rest on the bare allegations of his

25  complaint."  <u>Id.</u>  Uncontroverted allegations in the complaint

26  are accepted as true, and factual disputes created by

27  conflicting affidavits are resolved in plaintiff's favor.  <u>Id.</u>

28       "When no federal statute governs personal jurisdiction, the

district court applies the law of the forum state." _Boschetto v. Hansing_, 539 F.3d 1011, 1015 (9th Cir. 2008).  California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.  _See_ Cal. Civ. Proc. Code § 410.10.  Accordingly, California courts may exercise personal jurisdiction over a defendant so long as it comports with due process.  _Boschetto_, 539 F.3d at 1015.  "For a court to exercise personal jurisdiction over a nonresident defendant [in accordance with due process], that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  _Schwarzenegger_, 374 F.3d at 801 (quoting _International Shoe Co. v. Washington_, 326 U.S. 310, 316 (1945)).  There are two kinds of personal jurisdiction a forum state may exercise over a defendant: general jurisdiction and specific jurisdiction.  _Boschetto_, 539 at 1016.

> 1.   General Jurisdiction

The first type of personal jurisdiction, general jurisdiction, allows a court to hear any and all claims against a defendant.  _Martinez v. Aero Caribbean_, 764 F.3d 1062, 1066 (9th Cir. 2014).  A court may exercise general jurisdiction over a defendant when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum state.  _Daimler AG v. Bauman_, 571 U.S. 117, 127 (2014) (internal quotations and citations omitted).  For a corporation, the paradigm forum for the exercise of general jurisdiction is its place of incorporation and principal place

of business.  Id. at 137.  Only in an "exceptional" case will a "corporation's operations in a forum other than its formal place of incorporation or principal place of business [. . .] be so substantial and of such a nature as to render the corporation at home in that State."  Id. at 139 n. 19.

While the Court did not define what such an exceptional case would be, it did cite to Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952), as an example indicating "the bar for such a finding is very high."  Cahen v. Toyota Motor Corp., 147 F.Supp.3d 955, 965 (N.D. Cal. 2015).  Perkins involved a mining company based out of the Philippines.  342 U.S. at 447.  The Court found general jurisdiction over the corporation was proper in Ohio because during the Japanese occupation of the Philippines the president was directing all of the company's activities from there.  Id. at 447-448.  The Court in Daimler explained that general jurisdiction was appropriate in Perkins because "[g]iven the wartime circumstances, Ohio could be considered a surrogate for the place of incorporation or head office."  Daimler, 571 U.S. at 130 n. 8.

Here, FCA's place of incorporation is Delaware and its principal place of business is Michigan.  SAC ¶ 2.  Plaintiff relying on pre-Daimler cases argues, that despite this, FCA's contacts with California are so continuous and systematic as to render it essential at home here.  Pl.'s Opp'n to FCA's 12(b)(2) Mot. at 5.  The Court disagrees.  There is nothing exceptional about this case that would extend general jurisdiction beyond the states where FCA is incorporated and has its principal place of business.  FCA does not design, manufacture, or assemble any

motor vehicles in California.  Terry Decl. ¶ 3.  And its
operations in this state are limited to two facilities, which,
together, employ fewer than 200 people, comprising less than
.32% of FCA's workforce.  Id. ¶ 4.  While Plaintiff also alleges
Defendant markets in California and "sells and transports
hundreds and thousands of cars in the State," Opp'n at 5, this
does not make FCA essentially at home in California warranting
general jurisdiction.  See Daimler, 571 U.S. at 139 ("If
[defendant's] California activities sufficed to allow
adjudication of this Argentina-rooted case in California, the
same global reach would presumably be available in every other
State in which [defendant's] sales are sizable.")

     Similarly, Lithia Motors' place of incorporation and
principal place of business are in Oregon.  SAC ¶ 3.  Lithia
DMID, a subsidiary of Lithia Motors, is a Texas corporation with
its principal place of business in Oregon.  SAC ¶ 4.  Plaintiff,
however, argues that Lithia Motors is at home in California
because it has a large physical presence in the State.  Pl.'s
Opp'n to Lithia's 12(b)(2) Mot. at 5.  Specifically, Lithia
Motors has 45 dealerships in California, maintains a permanent
workforce in the State, is licensed to do business here, pays
taxes, and advertises in California.  Id.  But doing business in
the State is not enough to justify general jurisdiction as "[a]
corporation that operates in many places can scarcely be deemed
at home in all of them."  Daimler, 571 U.S. at 139 n. 20.

     Because all of Defendants' place of incorporation and
principal place of business are outside of California and
Plaintiff has not demonstrated this is one of the "exceptional

cases" where any of Defendants' contacts are "so substantial and of such a nature as to render" them essentially at home in California, the Court finds California does not have general jurisdiction over Defendants.  Id. at 761 n. 19.

### 2.  Specific Jurisdiction

Specific jurisdiction on the other hand, allows a court to exercise jurisdiction when the suit arises out of or relates to the defendant's contacts with the forum.  Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017).  In the Ninth Circuit, specific jurisdiction is appropriate if: (1) a non-resident defendant purposefully directs their activities towards the forum or performs some act by which they purposefully avail themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two prongs of the test.  Id.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  Id.  If the plaintiff does satisfy the first two prongs "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985)).

FCA and Lithia Motors argue specific jurisdiction is

inappropriate in California because Plaintiff purchased his car in Texas.  FCA's 12(b)(2) Mot. at 5; Lithia's 12(b)(2) Mot. at 3.  They insist that because Plaintiff purchased the car out of state, he cannot show that his claims arise from or relate to their activities in California.  FCA's 12(b)(2) Mot. at 5; Lithia's 12(b)(2) Mot. at 3.  While the present Motions were pending, the Supreme Court decided Ford Motor Company v. Montana Eight Judicial District Court, 141 S.Ct. 1017 (2021), foreclosing this argument.  FCA and Lithia attempted to distinguish the case at hand from that of Ford Motor, but as explained below, the Court finds their arguments unavailing. See Lithia's Suppl. Br., ECF No. 45; FCA Suppl. Br., ECF No. 46.

Ford Motor involved two cases arising from car accidents in Montana and Minnesota against Ford.  Id. at 1023.  While Ford did substantial business in both states including advertising, selling, and servicing the model of the car the suits claimed were defective, Ford contended specific jurisdiction was improper because the particular car involved in the accidents had been purchased, manufactured, and designed out of state. Id. at 1022.  Ford argued, as FCA and Lithia Motors do here, that the State only had jurisdiction if the company's conduct in the State had given rise to the plaintiff's claims.  Id. at 1023.  That causal link existed, Ford contended, only if the company had designed, manufactured, or sold the particular car involved in the accident in the State.  Id.

The Supreme Court rejected this argument, finding specific jurisdiction exists when a company "serves a market for a product in the forum State and the product malfunctions there."

1    Id. at 1027.  In so holding, the Court noted that Ford urged

2    Montanans and Minnesotans to buy its car through advertisements,

3    their cars were available for sale in the states, and their

4    dealers regularly maintained and repaired Ford cars.  Id.

5    Accordingly, Ford had purposefully availed itself of the

6    privilege of conducting business with Montana and Minnesota.

7    Id.  The Court also found plaintiffs' claims were related to

8    these contacts as "Ford had systematically served a market in

9    Montana and Minnesota for the very vehicles that the plaintiffs

10   allege[d] malfunctioned and injured them in those States" even

11   though the cars were purchased elsewhere.  Id. at 1028.

12       Similarly, here, Plaintiff has alleged that FCA and Lithia

13   Motors, have served a market in California for the Dodge Demon,

14   which they do not dispute.  SAC ¶¶ 1, 3, 10, 12; see Lithia's

15   12(b)(2) Mot. at 3; see generally FCA's 12(b)(2) Reply; Lithia's

16   12(b)(2) Reply.  Specifically, Plaintiff has alleged that FCA

17   markets and sells cars in California, including the Dodge Demon,

18   as well as owns a parts distribution and business center here.

19   Id. ¶¶ 3, 10, 12.  Plaintiff alleges that Lithia Motors is a

20   large automotive retailer who generates approximately a quarter

21   of its revenue from California.  Id. ¶ 3.  Because Plaintiff

22   alleges that FCA and Lithia Motors have systematically served a

23   market in California for the very car that Plaintiff alleges

24   malfunctioned here, there is specific jurisdiction in California

25   over Plaintiff's claims arising out of the car's deficiencies,

26   even though it was purchased in Texas.  See Ford Motor, 141

27   S.Ct. at 1027.

28       Contrastingly, Plaintiff has made no showing that Lithia

DMID, who operates the dealership he purchased the car from in

Texas and a subsidiary of Lithia Motors, has any contacts with

California.  <u>See</u> SAC ¶¶ 4, 5.  Plaintiff contends that Lithia

DMID purposefully availed itself of the privileges of doing

business in California by selling him, a California resident,

the vehicle.  Pl.'s Opp'n to Lithia's 12(b)(2) Mot. at 7.  But

this is not enough to establish sufficient minimum contacts

justifying jurisdiction.  <u>See Boschetto</u>, 539 F.3d at 1017 ("the

formation of a contract with a nonresident defendant is not,

standing alone, sufficient to create jurisdiction.")

Accordingly, the Court GRANTS Defendant Lithia DMID's Motion to

Dismiss for lack of personal jurisdiction.  FCA and Lithia

Motor's 12(b)(2) Motions are DENIED.

> C.   <u>Failure to State a Claim</u>

A Rule 12(b)(6) motion challenges the complaint as not

alleging sufficient facts to state a claim for relief. F. R.

Civ. P. 12(b)(6).  "To survive a motion to dismiss [under

12(b)(6)], a complaint must contain sufficient factual matter,

accepted as true to state a claim for relief that is plausible

on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

(internal quotation marks and citation omitted).  While

"detailed factual allegations" are unnecessary, the complaint

must allege more than "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements."

<u>Id.</u>  "In sum, for a complaint to survive a motion to dismiss,

the non-conclusory 'factual content,' and reasonable inferences

from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief.  <u>Moss v. U.S. Secret Serv.</u>,

1 | 572 F.3d 962, 969 (9th Cir. 2009).

2 |           1.   <u>Whether Plaintiff May Assert California Law</u>

3 |                <u>Claims When the Car was Purchased in Texas</u>

4 |     FCA first argues that Plaintiff's California statutory law

5 | claims: violation of the False Advertising Law ("FAL"),

6 | violation of the California Consumer Legal Remedies Act

7 | ("CLRA"), unfair business practices ("UCL"), and Song-Beverly

8 | Act fail as these statutes do not apply to purchases made

9 | outside of California.  FCA's 12(b)(6) Mot. at 5.  In support,

10 | FCA notes that "California law presumes that the legislature did

11 | not intend a statute to be operative, with respect to

12 | occurrences outside the state."  <u>Id.</u> (quoting <u>Wilson v. Frito-</u>

13 | <u>Lay N. Am., Inc.</u>, 961 F.Supp.2d 1134, 1147 (N.D. Cal. 2013)).

14 | But the basis of Plaintiff's FAL, CLRA, and UCL claims, the

15 | fraudulent misrepresentations, occurred in California.  <u>See</u>

16 | <u>Sullivan v. Oracle Corp.</u>, 51 Cal.4th 1191, 1208 n. 10 (2011)

17 | (noting that when the unlawful conduct that forms the basis of

18 | the claims, namely fraudulent misrepresentations made to induce

19 | consumer transactions, occurs in California, application of

20 | California law is appropriate.)  FCA points to no persuasive

21 | authority that this is insufficient and that these statutes only

22 | apply to <u>purchases</u> in state.

23 |     Further, under the Song-Beverly Act every sale of consumer

24 | goods sold at retail in California, unless properly disclaimed,

25 | is accompanied by the manufacturer's and retail seller's implied

26 | warranty that the goods are merchantable.  Cal. Civ. Code

27 | § 1792.  A "sale" occurs under California law at the time title

28 | to the goods passes from the seller to the buyer.  <u>Id.</u>

§ 1791(n). Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods. Cal. Com. Code. § 2401(2); see also Cal. State Electronics Ass'n v. Zeos Int'l Ltd., 41 Cal.App.4th 1270, 1276 (Ct. App. 1996) (Section 2401 determines where title passes for Song-Beverly purposes). Thus, if the sales contract requires the seller to send the goods to the buyer but does not require the seller to deliver them at a specific destination, title passes to the buyer at the time and place of shipment. Galicia v. Country Coach, Inc., 324 F. App'x 687, 888-89 (9th Cir. 2009). However, if the contract requires delivery at a specific destination, title passes on tender at that destination. Id.

Here, Plaintiff alleges that the car was shipped from the dealership in Texas to Manteca, California. SAC ¶ 21. While he does not specifically allege that this was a destination contract, viewed in the light most favorable to him, it is plausible that this was a destination contract. Accordingly, title would have passed in California, making the Song-Beverly Act applicable.

### 2. Requirements of Rule 9(b)

Generally, under Rule 8(a)(2) of the Federal Rules of Civil Procedure a plaintiff's pleading need only contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 9(b), however, requires that allegations of fraud be stated with particularity. Fed. R. Civ. P. 9(b). Conditions of the mind, such as knowledge and intent may be alleged generally though. Id.

The parties dispute which of Plaintiff's claims are subject to the heightened pleading requirement of Rule 9(b).  FCA argues that Plaintiff's FAL, CLRA, UCL, fraudulent concealment, negligent misrepresentation, and unjust enrichment claims must all meet the requirements of 9(b).  FCA's 12(b)(6) Mot. at 6. Plaintiff concedes that his fraudulent concealment claim is subject to the heightened pleading requirement but argues that his FAL, CLRA, UCL, negligent misrepresentation, and unjust enrichment claims are not subject to rule 9(b) as they are not based on fraud.  See Opp'n to FCA's 12(b)(6) Mot. at 10. Accordingly, the Court first addresses whether these claims must meet the heightened particularity requirement of Rule 9(b).

In a case where fraud is not an essential element of the claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003).  In California fraud requires: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting Engalla v. Permanente Med. Group, Inc., 938 P.2d 903 (Cal. 1997)).

Fraud is not an essential element of FAL, CLRA, UCL, negligent misrepresentation, or unjust enrichment claims.  See Kearns, 567 F.3d at 1225 ("fraud is not a necessary element of a claim under the CLRA and UCL"); Lyles v. Sangadeo-Patel, 225 Cal.App.4th 759, 767 (Ct. App. 2014 B.L.M. v. Sabo & Deitsch, 55

14

1   Cal.App.4th 823, 834 (Ct. App. 1997) (to have a claim for

2   negligent misrepresentation the representation need not be made

3   with knowledge of actual falsity).  However, Plaintiff must

4   still satisfy the requirements of Rule 9(b) if he has alleged a

5   unified course of fraudulent conduct and relies on that course

6   of conduct as a basis of the claims.  Kearns, 567 F.3d at 1225.

7        Here, Plaintiff has alleged a unified course of fraudulent

8   conduct as he alleges FCA made material misrepresentations about

9   the Dodge Demon (SAC ¶¶ 12-14, 17) with knowledge of their

10  falsity (SAC ¶ 17), which Plaintiff relied upon in purchasing

11  the car (SAC ¶ 15).  Because his FAL, CLRA, UCL, negligent

12  misrepresentation, and unjust enrichment claims all rely on this

13  fraudulent course of conduct, specifically because Plaintiff

14  alleges FCA knew the claims they made were false, these claims

15  are subject to the heightened pleading requirement of Rule 9(b).

16  See generally SAC.

17       Having found these claims are subject to Rule 9(b), the

18  Court next determines whether the claims satisfy its heightened

19  requirements.  To satisfy Rule 9(b) a plaintiff must state with

20  particularity the circumstances constituting fraud or mistake.

21  Fed. R. Civ. P. 9(b).

22       *Affirmative Representations*

23       For allegations of affirmative misrepresentations this

24  means the plaintiff must allege "the who, what, when, and how of

25  the misconduct charged," including what is false or misleading

26  about a statement, and why it is false.  Ebeid ex rel. United

27  States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (internal

28  citations and quotations omitted).  FCA argues that Plaintiff

1  has failed to meet this requirement as his fraud claims are

2  based on "non-specific generalized allegations of

3  advertisements" without alleging whether he in fact was ever

4  exposed to any specific affirmative representation made by FCA,

5  and if so where and when this occurred, or how any alleged

6  statement was actually false.  FCA's 12(b)(6) Mot. at 7-8.  In

7  response, Plaintiff points to a specific FCA blogpost referenced

8  in the complaint, which states that the car's hood was "the

9  largest _functional_ hood scoop."  SAC ¶ 14 (emphasis added).

10 Plaintiff alleges that this statement was false as the hood

11 scoop is not functional since it expands, contracts, warps, and

12 vibrates when the car is used which damages the car's hood.  Id.

13 ¶ 17.[2]  Accordingly, the Court finds Plaintiff has sufficiently

14 alleged how FCA's statement that the hood scoop was functional

15 was false.  However, Plaintiff never specifies if he in fact saw

16 this blog post, and if so when.  See SAC ¶ 15.  Plaintiff also

17 alleges that "the Dodge Demon was advertised extensively,

18 including over the internet and on television shows such as Jay

19 Leon's Garage and Top Gear" and that these advertisements

20 "touted the Dodge Demon's workmanship, value, and future

21 collectability."  SAC ¶ 12.  Plaintiff merely alleges that

22 "[a]fter viewing FCA's advertisements, [he] became interested in

23 purchasing a Dodge Demon."  Id. ¶ 15.  But Plaintiff doesn't

24 specify what advertisements he saw, when or where he saw them,

25
26
27
28

[2] FCA also argues that an affirmative representation claim cannot be premised on a non-specific word like "functional" because such words constitute non-actionable puffery.  See FCA's 12(b)(6) Reply at 2.  Because FCA raises this argument for the first time in its reply, which Plaintiff did not have a chance to respond to, the Court will not address it.

what specific representations were made in them or how these representations were false.  Accordingly, Plaintiff's affirmative fraud-based claims are not pled with enough particularity to satisfy Rule 9(b).

> *Omission Based Claims*

In order to plead the circumstances of fraudulent omission with particularity a plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make their purchase and that failed to include the allegedly omitted information."  Marolda v. Symantec Corp., 672 F.Supp.2d 992, 1002 (N.D. Cal. 2009).  Additionally, "[t]o maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts."  Immobiliare LLC v. Westcor Land Title Ins. Co., 424 F.Supp.3d 882, 888 (E.D. Cal. 2019) (citation omitted).  A duty to disclose exists: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representation but also suppresses some material facts," with the later circumstances requiring "some other relationship between the plaintiff and defendant."  Id.

FCA argues that to the extent Plaintiff bases his FAL, CLRA, UCL, fraudulent concealment, and unjust enrichment claims

on an omission-based theory, they also fail to state a claim.[3] FAC's 12(b)(6) Mot. at 9.  First, FCA argues that Plaintiff has failed to plead any facts about the content of any purported omission or where such information could or should have been revealed so that he would have seen and relied on it if it had not been omitted.  Id.  Plaintiff, however, did plead the purported omission.  Specifically, that the Dodge Demon's hood scoop "expands, contracts, warps, and vibrates when the Dodge Demon is used, which in turn, chips, scrapes and cracks the original factory paint and causes damage to the Dodge Demon's hood, including rust."  SAC ¶ 17.  Plaintiff also includes in his complaint representative advertisements like the blog post stating the car has "the largest functional hood scoop."  Id. ¶ 14.  While not explicitly stated, the reasonable inference from this is that such information should have been included in these advertisements about the hood.

FCA also argues that Plaintiff has not adequately alleged a duty to disclose.  FCA's 12(b)(6) Mot. at 10.  First FCA contends that Plaintiff has failed to sufficiently allege a duty based on exclusive knowledge because those allegations are conclusory.  Id. at 10.  The Court agrees.  Plaintiff merely pleads that "FCA was aware that the Dodge Demon was experiencing issues with the Air-Grabber Hood Scoop."  SAC ¶ 17.  He does not plead any details about how or when FCA became aware of these issues.  See generally SAC.  Such conclusory allegations do not

---

[3] Negligent misrepresentation requires a positive assertion so it cannot be based on an omission.  UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 117 F.Supp.3d 1092, 1111 (C.D. Cal. 2015).

1  suffice.  See Wilson v. Hewlett-Packard Co., 668 F.3d 1136,

2  1146-47 (9th Cir. 2012).

3       Plaintiff, however, relies on another theory—that FCA made

4  partial representations about the hood but also suppressed some

5  material facts i.e. the issues with the hood, recounted above.

6  Pl.'s Opp'n to FCA's 12(b)(6) Mot. at 13; see also SAC ¶¶ 14-18.

7  Plaintiff alleges that he signed a 2018 Dodge Challenger SRT

8  Customer Acknowledge for FCA establishing a relationship between

9  the two and creating a duty to disclose.  Pl.'s Opp'n to FCA's

10  12(b)(6) Mot. at 13 n.7.  FCA does not address this argument nor

11  point to any authority indicating this is insufficient.

12  Accordingly, the Court finds Plaintiff has alleged a plausible

13  claim for relief based on fraudulent omission for his FAL, CLRA,

14  UCL[4], fraudulent concealment, and unjust enrichment claims.

15            3.   Economic Loss Rule

16       FCA argues that Plaintiff's fraudulent concealment and

17  negligent misrepresentation claim are barred by the economic

18  loss rule.  FCA's 12(b)(6) Mot. at 12.  Under the economic loss

19  rule, a manufacturer or distributor may be liable "in tort when

20  a product defect causes damage to other property, that is,

21  property other than the product itself," where "[t]he law of

22  contractual warranty governs damage to the product itself."

23  Jimenez v. Super. Ct., 29 Cal. 4th 473, 483 (2002).  However,

24  "the economic loss rule does not necessarily bar recovery in

25

26  [4] FCA also argues that because Plaintiff's FAL and CLRA claims
   fail his UCL claim, which relies on them, fails too.  See FCA's
27  12(b)(6) Reply at 3.  But as discussed, FCA has not shown that
   Plaintiff's FAL and CLRA claims fail and thus hasn't demonstrated
28  his UCL claim should be also be dismissed for this reason.

tort for damage that a defective product (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated." <u>Jimenez v. Super. Ct.</u>, 29 Cal. 4th 473, 483 (2002) (finding the manufacturer of a defective window installed in a mass-produced home may be held strictly liable in tort for damage the window's defect caused to other parts of the home).

Plaintiff, relying on <u>Jimenez</u>, argues that the economic loss rule does not bar his claims, as the defective product, the hood-scoop, caused damage to other portions of the larger product, the car.  Pl.'s Opp'n to FCA's 12(b)(6) Mot. at 15. <u>Jimenez</u> involved defective windows that caused damage to the homes they were installed in.  <u>Jimenez</u>, 29 Cal. 4th at 452.  The California Supreme Court held that the economic loss rule did not bar the plaintiff's claims.  <u>Id.</u> at 457.  In so holding the Court noted that at first it had to determine what the "product" at issue was.  <u>Id</u>. at 456.  The Court found that the windows were a separate product and that the economic loss rule thus did not bar tort recovery for damage it caused to the larger product (the house) of which it was incorporated.  <u>Id.</u> at 457.

The Appellate Court in <u>KB Home v. Superior Court</u> listed several factors relevant to determining what the product at issue is but noted that resolution of this issue should ultimately be left to the trier of fact.  112 Cal.App.4th 1076, 1087 (Ct. App. 2003).  Whether or not the hood scoop is a separate "product" is a question of fact, and FCA therefore cannot demonstrate that Plaintiff's ninth and tenth causes of action fail as a matter of law to allege a plausible claim for

1   relief based on the economic loss rule.  See <u>Sabicer v. Ford</u>

2   <u>Motor Co.</u>, 362 F.Supp.3d 837, 841 (C.D. Cal. 2019)(finding

3   defendants failed to show the economic los rule necessarily

4   precluded plaintiff's claim as there may be recovery in tort for

5   damage that subcomponents caused to the engine as a whole or for

6   damage that the engine caused to the vehicle in which it has

7   been incorporated.)

8           4.  <u>Express Warranty Claims</u>

9       "In California, express warranties covering defects in

10  materials and workmanship exclude defects in design."  <u>Troup v.</u>

11  <u>Toyota Motor Corp.</u>, 545 Fed. App'x 668, 668-69 (9th Cir. 2013)

12  (citing <u>Daugherty v. Am. Honda Motor Co., Inc.</u>, 144 Cal. App.

13  4th 824, 830 (2006)).

14      Here, Plaintiff's car came with a warranty which "covers

15  the cost of all parts and labor needed to repair any item on

16  your vehicle when it left the manufacturing plant that is

17  defective in material, workmanship or factory preparation."  SAC

18  ¶ 20.  Accordingly, the warranty does not include design

19  defects.  <u>Daugherty</u>, 144 Cal. App. at 830.  FCA argues that

20  because Plaintiff complains of a design defect, not covered by

21  the warranty, he fails to state an express warranty claim.

22  FCA's 12(b)(6) Mot. at 13.  Plaintiff contests FCA's

23  characterization of his claim as alleging a design defect

24  arguing that he never actually calls the hood scoop issue a

25  "design defect" but rather refers to it as a "defect, defective,

26  or nonconforming."  Pl.'s Opp'n at 15. Plaintiff's argument is

27  unpersuasive.  While he may not have specifically referred to

28  the hood issues as a "design defect" that is, in fact, what he

21

is alleging.  A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.  McCabe v. Am. Honda Motor Co., 100 Cal. App. 4th 111, 1120 (2002).  Plaintiff here does not claim there was something uniquely wrong with his car.  Rather he alleges there was a problem with all Dodge Demon hoods, a problem with how it was designed.  See SAC ¶ 17 ("FCA was aware that the Dodge Demon was experiencing issues with the Air-Grabber Hood Scoop [. . .] specifically, that the Dodge Demon's Air-Grabber Hood Scoop expands, contracts, warps, and vibrates when the Dodge Demons is used.")

Because Plaintiff alleges a design defect not covered by the warranty, he has failed to state an express warranty claim. Accordingly, FCA's motion to dismiss claims three and eight is GRANTED.  FCA's motion to dismiss Plaintiff's seventh cause of action is GRANTED in part, to the extent it is based on the express warranty.

          5.  Implied Warranty Claims

The Song-Beverly Act "was enacted to regulate warranties and strengthen consumer remedies for breaches of warranty." Cholakyan v. Mercedes-Benz USA, LLC, 796 F.Supp.2d 1220, 1241 (C.D. Cal. 2011).  Thus, "[u]nless specific disclaimer methods are followed, an implied warranty of merchantability accompanies every retail sale of consumer goods in the state."  Id.  The Song-Beverly Act provides that the implied warranty of merchantability means that consumer goods: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used;

1   (3) are adequately packaged and labeled; and (4) conform to the

2   affirmations of fact included on the container or label.  See

3   Cal. Civ. Code § 1791.1(a).  The Act defines consumer goods as

4   "any new product or part thereof that is used, bought, or leased

5   for use primarily for personal, family, or household purpose."

6   Cal. Civ. Code § 1791(a).

7       FCA argues that Plaintiff has failed to adequately allege

8   an implied warranty claim because what Plaintiff complains of is

9   an entirely cosmetic issue.  FCA's 12(b)(6) Mot. at 14.

10  Plaintiff responded to this argument in his opposition but

11  because it was over the Court's page-limit on opposition

12  memoranda the Court will not consider it.  See Pl.'s Opp'n to

13  FCA's 12(b)(6) Mot.; see also Order re Filing Requirements, ECF

14  No. 2-2.  The Court agrees with FCA.  Plaintiff has not made any

15  allegations that the car is unfit for driving, the ordinary

16  purpose for which it is used.  The issue Plaintiff complains of

17  is that the hood "expands, contracts, warps, and vibrates when

18  the Dodge Demon is used, which in turn, chips, scrapes and

19  cracks the original factory paint and causes damage to the Dodge

20  Demon's hood, including rust."  SAC ¶ 17.  This is merely a

21  cosmetic issue.  Because Plaintiff has not alleged the defect

22  renders the car unfit for its intended purpose, Plaintiff has

23  failed to state an implied warranty claim.  See e.g. Troup v.

24  Toyota Motor Corp., 545 Fed. Appx. 668, 669 (9th Cir. 2013)

25  (affirming dismissal of implied warranty claim where plaintiffs

26  "failed to allege that their Prius was unfit for its intended

27  purpose, as the alleged defect did not compromise the vehicle's

28  safety, render it inoperable, or drastically reduce tis mileage

range"); <u>Resnick v. Hyundai Motor Am., Inc.</u>, 2017 WL 1531192, at *12 (C.D. Cal. 2017)("implied warranty of merchantability requires something beyond mere aesthetic concerns"); <u>Avedisian v. Mercedes-Benz USA, LLC</u>, 43 F.Supp.3d 1071, 1074, 1079 (C.D. Cal. 2014) ("peeling chrome trim on certain interior car components" did not support implied warranty claim because it "did not impact the operability of Plaintiff's vehicle"). Accordingly, FCA's motion to dismiss Plaintiff's implied warranty claims, claims four and seven, is GRANTED.

6.  <u>Violation of Manufacturers Duties</u>

Finally, FCA moves to dismiss Plaintiff's fifth claim for relief, based on an alleged violation of the manufacturer's duties under the Song-Beverly Act.  FCA's 12(b)(6) Mot. at 15. Plaintiff, in his complaint, notes that the express warranty covers "the cost of all parts needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."  SAC ¶ 65. Pursuant to California Civil Code Section 1793.2(a)(1) and (3), FCA is obligated to (1) maintain or designate sufficient service and repair facilities reasonably close to all areas where the Dodge Demons are sold to carry out the terms of its warranties and (2) make available to authorized service and repair facilities sufficient literature and replacement parts to effect repairs during the express warranty period.

Plaintiff claims FCA has violated these obligations in failing to maintain or designate authorized repair facilities "that are able to guarantee that paint repairs, necessitated by the Air-Grabber Hood Scoop issues, will conform to the factory

24

1    specifications in violation of its obligation to carry out its

2    warranties."   SAC ¶ 67.   But as FCA points out, nothing in these

3    cited provisions requires either a manufacturer or its repair

4    facilities provide any "guarantees".   FCA's 12(b)(6) Mot. at 15.

5    Further, as discussed in detail above, Plaintiff has not alleged

6    any violation of the warranties such that a failure to have a

7    repair facility available to make his desired fixes would also

8    violate the manufacturer's duties of the Song-Beverly Act.

9    Because Plaintiff has not alleged a plausible claim for relief

10   for violation of the manufacturer's duties under the Song-

11   Beverly Act, the Court GRANTS FCA's Motion to Dismiss

12   Plaintiff's fifth cause of action.

13                     7.   Breach of Contract

14      Lithia Motors and Lithia DMID ("Lithia") move to dismiss

15   Plaintiff's sole claim against them, the breach of contract

16   claim.   Lithia's 12(b)(6) Mot.   First, Lithia argues that

17   Plaintiff has failed to state a claim against Lithia Motors as

18   they were not a party to the contract.   Id. at 2-3.   The Court

19   agrees.   The contract, attached to Plaintiff's complaint, shows

20   that only Lithia DMID was a party to the contract.   See SAC at

21   Ex. A.   Although Plaintiff alleges that Lithia DMID is the

22   subsidiary of Lithia Motors, it is a general principle of

23   corporate law that a parent corporation is not liable for the

24   acts of its subsidiaries.   U.S. v. Bestfoods, 524 U.S. 51, 61

25   (1998).   Plaintiff points to no contrary authority.   See Pl.'s

26   Opp'n to Lithia's 12(b)(6) Mot. at 6.   Because the Court has

27   already dismissed Lithia DMID for a lack of personal

28   jurisdiction, the Court GRANTS Lithia's Motion to Dismiss

1  Plaintiff's eleventh cause of action for breach of contract.

2                          III.   ORDER

3       For the reasons set forth above, Lithia DMID's 12(b)(2)

4  Motion to Dismiss for lack of personal jurisdiction is GRANTED

5  WITHOUT PREJUDICE.  Lithia Motor's 12(b)(6) Motion to Dismiss

6  Plaintiff's eleventh cause of action, for breach of contract, is

7  also GRANTED WITHOUT PREJUDICE.  FCA's and Lithia Motor's

8  12(b)(2) Motions to Dismiss for lack of personal jurisdiction are

9  DENIED.  FCA's 12(b)(6) Motion to Dismiss is GRANTED in part and

10  DENIED in part.  The Court GRANTS FCA's Motion to Dismiss claims

11  three, four, five, seven, eight, and ten WITHOUT PREJUDICE.

12  FCA's Motion to Dismiss claims one, two, six, nine, and twelve is

13  GRANTED WITHOUT PREJUDICE only to the extent they are based on

14  fraudulent affirmative misrepresentations.  FCA's Motion to

15  Dismiss the remaining claims is DENIED.[5]  If Plaintiff elects to

16  amend his complaint, he shall file an Amended Complaint within

17  twenty (20) days of this Order.  Defendants' responsive pleadings

18  are due twenty (20) days thereafter.

19       IT IS SO ORDERED.

20  Dated: April 19, 2021

21

22                                   JOHN A. MENDEZ,
                                     UNITED STATES DISTRICT JUDGE
23

24  _____

25  [5] The Court acknowledges that FCA provided an additional argument
    as to why Plaintiff's twelfth cause of action for unjust
26  enrichment should be dismissed.  See FCA's 12(b)(6) Mot. at 16.
    However, because this argument exceeded the Court's page-limit on
27  memoranda of law in support of motions, the Court will not
    consider or address it.  See id.; see also Order re Filing
28  Requirements, ECF No. 2-2.